*PRELIMINARY PRINT*

VOLUME 601 U. S. PART 2
PAGES 257–266

# OFFICIAL REPORTS

OF

# THE SUPREME COURT

APRIL 12, 2024

Page Proof Pending Publication

REBECCA A. WOMELDORF

REPORTER OF DECISIONS



NOTICE: This preliminary print is subject to formal revision before the bound volume is published. Users are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D.C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

## MACQUARIE INFRASTRUCTURE CORP. ET AL. *v.* MOAB PARTNERS, L. P., ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

No. 22–1165.   Argued January 16, 2024—Decided April 12, 2024

Petitioner Macquarie Infrastructure Corporation owns a subsidiary that operates terminals to store bulk liquid commodities, including No. 6 fuel oil, a byproduct of the refining process with a typical sulfur content close to 3%.   In 2016, the United Nations' International Maritime Organization formally adopted IMO 2020, a regulation capping the sulfur content of fuel oil used in shipping at 0.5% by 2020.   In the ensuing years, Macquarie did not discuss IMO 2020 in its public offering documents.   In February 2018, however, Macquarie announced a drop in the amount of storage contracted for use by its subsidiary due in part to the decline in the No. 6 fuel oil market.   Macquarie's stock price fell 41%.

In response, Moab Partners, L. P., sued Macquarie and various officer defendants.   Moab alleged, among other things, that Macquarie violated Securities and Exchange Commission Rule 10b–5(b)—which makes it unlawful to omit material facts in connection with buying or selling securities when that omission renders "statements made" misleading— because it had a duty to disclose the IMO 2020 information under Item 303 of SEC Regulation S–K.   Item 303 requires companies to disclose "known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations" in periodic filings with the SEC.   17 CFR §229.303(b)(2)(ii).   The District Court dismissed Moab's complaint.   The Second Circuit reversed, concluding in part that Moab's allegations concerning the likely material effect of IMO 2020 gave rise to a duty to disclose under Item 303, and Macquarie's Item 303 violation alone could sustain Moab's §10(b) and Rule 10b–5 claim.   See 2022 WL 17815767, *1–*2.

*Held*: Pure omissions are not actionable under Rule 10b–5(b).   Rule 10b–5(b) makes it unlawful "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."   17 CFR §240.10b–5(b).   In addition to prohibiting "any untrue statement of a material fact"—*i.e.*, false statements or lies—the Rule also prohibits omitting a material fact necessary "to make the statements made . . . not misleading."   *Ibid.*   This case

turns on whether this second prohibition bars only half-truths or instead extends to pure omissions.

A pure omission occurs when a speaker says nothing, in circumstances that do not give any special significance to that silence. Half-truths, on the other hand, are "representations that state the truth only so far as it goes, while omitting critical qualifying information." *Universal Health Services, Inc.* v. *United States ex rel. Escobar*, 579 U. S. 176, 188. Rule 10b–5(b) requires disclosure of information necessary to ensure that statements already made are clear and complete. Logically and by its plain text, Rule 10b–5(b) therefore covers half-truths, not pure omissions, because it requires identifying affirmative assertions (*i.e.*, "statements made") before determining if other facts are needed to make those statements "not misleading."

Statutory context confirms what the text plainly provides. Section 11(a) of the Securities Act of 1933 prohibits any registration statement that "omit[s] to state a material fact required to be stated therein." 15 U. S. C. § 77k(a). By its terms, § 11(a) creates liability for failure to speak. Neither § 10(b) nor Rule 10b–5(b) contains language similar to § 11(a), and that omission is telling.

"Silence, absent a duty to disclose, is not misleading under Rule 10b–5." *Basic Inc.* v. *Levinson*, 485 U. S. 224, 239, n. 17. A duty to disclose, however, does not automatically render silence misleading under Rule 10b–5(b). The failure to disclose information required by Item 303 can support a Rule 10b–5(b) claim only if the omission renders affirmative statements made misleading. Moab and the United States suggest that a plaintiff does not need to plead any statements rendered misleading by a pure omission because reasonable investors know that the Exchange Act requires issuers to file periodic informational statements in which companies must furnish the information required by Item 303. But that argument reads the words "statements made" out of Rule 10b–5(b) and shifts the focus of that Rule and § 10(b) from fraud to disclosure. See *Chiarella* v. *United States*, 445 U. S. 222, 234–235 ("Section 10(b) is aptly described as a catchall provision, but what it catches must be fraud"). Moab also contends that without private liability for pure omissions under Rule 10b–5(b), there will be "broad immunity any time an issuer fraudulently omits information Congress and the SEC require it to disclose." Brief for Respondent Moab Partners 1. But private parties remain free to bring claims based on Item 303 violations that create misleading half-truths, and the SEC retains authority to prosecute violations of its own rules and regulations, including Item 303. Pp. 263–266.

Vacated and remanded.

Sotomayor, J., delivered the opinion for a unanimous Court.

Page Proof Pending Publication

Opinion of the Court

*Linda T. Coberly* argued the cause for petitioners. With her on the briefs were *Richard W. Reinthaler*, *John E. Schreiber*, *Kerry C. Donovan*, *Lauren Gailey*, *Christopher M. Paparella*, and *Bruce C. Bishop*. *Kannon K. Shanmugam* and *William T. Marks* filed briefs for Barclays Capital Inc., respondent under this Court's Rule 12.6, urging vacatur.

*David C. Frederick* argued the cause for respondent Moab Partners, L. P. With him on the brief were *Joshua D. Branson*, *Salvatore J. Graziano*, *Lauren Amy Ormsbee*, *Jesse L. Jensen*, *William E. Freeland*, *Lori Marks-Esterman*, and *John G. Moon*.

*Ephraim A. McDowell* argued the cause for the United States as *amicus curiae* urging affirmance. With him on the brief were *Solicitor General Prelogar*, *Deputy Solicitor General Stewart*, *Megan Barbero*, *Michael A. Conley*, *Jeffrey A. Berger*, and *Rachel M. McKenzie*.*

JUSTICE SOTOMAYOR delivered the opinion of the Court. Securities and Exchange Commission (SEC) Rule 10b–5(b) makes it unlawful to omit material facts in connection with buying or selling securities when that omission renders "statements made" misleading. Separately, Item 303 of SEC Regulation S–K requires companies to disclose certain information in periodic filings with the SEC. The question

---

*Briefs of *amici curiae* urging reversal were filed for the Securities Industry and Financial Markets Association et al. by *William M. Jay*, *Andrew Kim*, *Kevin Carroll*, *Tyler S. Badgley*, and *Jesse Lempel*; for the Society for Corporate Governance by *Mary Eaton* and *Meredith E. Kotler*; and for the Washington Legal Foundation by *Lyle Roberts*, *George E. Anhang*, *Cory L. Andrews*, and *John M. Masslon II*. *Lawrence S. Ebner*, *Eric B. Boettcher*, and *Raffi Melkonian* filed a brief for the Atlantic Legal Foundation as *amicus curiae* urging vacatur.

Briefs of *amici curiae* urging affirmance were filed for Consumer Advocates by *Hannah Kieschnick*, *Sean Domnick*, and *Jeffrey R. White*; for Former SEC Officials by *John Paul Schnapper-Casteras*, *Carol V. Gilden*, *Daniel P. Chiplock*, and *Laura H. Posner*; for Institutional Investors by *Kevin K. Russell*, *Lawrence M. Rolnick*, and *Richard A. Bodnar*; and for Law and Business Professors by *J. Robert Brown, Jr.*, *pro se*.

in this case is whether the failure to disclose information required by Item 303 can support a private action under Rule 10b–5(b), even if the failure does not render any "statements made" misleading. The Court holds that it cannot. Pure omissions are not actionable under Rule 10b–5(b).

I

A

Section 10(b) of the Securities Exchange Act of 1934 makes it "unlawful for any person . . . [t]o use or employ, in connection with the purchase or sale of any security . . . , any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 48 Stat. 891, 15 U. S. C. § 78j(b). Rule 10b–5 implements this prohibition and makes it unlawful for issuers of registered securities to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 CFR § 240.10b–5(b) (2022). This Court "has found a right of action implied in the words of [§ 10(b)] and its implementing regulation." *Stoneridge Investment Partners, LLC* v. *Scientific-Atlanta, Inc.*, 552 U. S. 148, 157 (2008).

Section 13(a) of the Exchange Act requires issuers to file periodic informational statements. See 15 U. S. C. §§ 78m(a)(1), 78*l*(b)(1). These statements include the "Management's Discussion and Analysis of Financial Conditions and Results of Operations" (MD&A), in which companies must "[f]urnish the information required by Item 303 of Regulation S–K." See SEC Form 10–K; SEC Form 10–Q. Item 303, in turn, requires companies to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." 17 CFR § 229.303(b)(2)(ii) (2022).

B

Macquarie Infrastructure Corporation owns infrastructure-related businesses, including a subsidiary that operates large "bulk liquid storage terminals" within the United States. These terminals handle and store liquid commodities, such as petroleum, biofuels, chemicals, and oil products. One liquid commodity stored in these terminals is No. 6 fuel oil, a high-sulfur fuel oil that is a byproduct of the refining process. In 2016, the United Nations' International Maritime Organization formally adopted IMO 2020, a regulation that capped the sulfur content of fuel oil used in shipping at 0.5% by the beginning of 2020. No. 6 fuel oil typically has a sulfur content closer to 3%. In the ensuing years, Macquarie did not discuss IMO 2020 in its public offering documents. In February 2018, however, Macquarie announced that the amount of storage capacity contracted for use by its subsidiary's customers had dropped in part because of the structural decline in the No. 6 fuel oil market. Macquarie's stock price fell around 41%.

Moab Partners, L. P. sued Macquarie and various officer defendants, alleging, among other things, a violation of §10(b) and Rule 10b–5. The crux of Moab's argument was that Macquarie's public statements "were false and misleading" because it "concealed from investors that [its subsidiary's] single largest product . . . was No. 6 fuel oil," which "faced a near-cataclysmic ban on the bulk of its worldwide use through IMO 2020." *City of Riviera Beach Gen. Employees Retirement System* v. *Macquarie Infrastructure Corp.*, 2021 WL 4084572, *6 (SDNY, Sept. 7, 2021) (internal quotation marks omitted). In Moab's view, Macquarie had "'a duty to disclose' the extent to which [its subsidiary's] storage capacity was devoted to No. 6 fuel oil," *ibid.*, but instead, Macquarie "violated disclosure obligations under Item 303," *id.*, at *10, and therefore violated §10(b) and Rule 10b–5. The District Court dismissed Moab's complaint,

concluding in relevant part that Moab had not "actually plead[ed] an uncertainty that should have been disclosed" or "in what SEC filing or filings Defendants were supposed to disclose it." *Ibid.*

The Second Circuit reversed. The court reasoned that there are "two circumstances which impose a duty on a corporation to disclose omitted facts." 2022 WL 17815767, \*1 (Dec. 20, 2022). First, a duty arises when there is "'"a statute or regulation requiring disclosure,"'' . . . such as Ite[m] 303." *Ibid.* (quoting *Stratte-McClure* v. *Morgan Stanley,* 776 F. 3d 94, 101 (CA2 2015)). Second, "[e]ven when there is no existing independent duty to disclose information, once a company speaks on an issue or topic, there is a duty to tell the whole truth." 2022 WL 17815767, \*1 (internal quotation marks omitted). "Crediting [Moab's] allegations as true, IMO 2020's significant restriction of No. 6 fuel oil use was known to [Macquarie] and reasonably likely to have material effects on [Macquarie's] financial condition or results of operation." *Id.,* at \*3. Because Moab had "adequately alleged a 'known trend[ ] or uncertaint[y]' that gave rise to a duty to disclose under Item 303," *id.,* at \*2 (alterations in original), the court applied its binding precedent to conclude that Macquarie's Item 303 violation alone could sustain Moab's § 10(b) and Rule 10b–5 claim. See *ibid.* ("The failure to make a material disclosure required by Item 303 can serve as the basis . . . for a claim under Section 10(b)").

The courts of appeals disagree on whether a failure to make a disclosure required by Item 303 can support a private claim under § 10(b) and Rule 10b–5(b) in the absence of an otherwise-misleading statement.[1] This Court granted

---

[1] Compare *Stratte-McClure* v. *Morgan Stanley,* 776 F. 3d 94, 101 (CA2 2015) ("Item 303's affirmative duty to disclose in Form 10–Qs can serve as the basis for a securities fraud claim under Section 10(b)"), with *In re Nvidia Corp. Securities Litigation,* 768 F. 3d 1046, 1056 (CA9 2014) ("Item 303 does not create a duty to disclose for purposes of Section 10(b) and Rule 10b–5"); see also *Oran* v. *Stafford,* 226 F. 3d 275, 288 (CA3 2000) ("[T]he 'demonstra-

certiorari to resolve that disagreement.  600 U. S. –––
(2023).

## II

Rule 10b–5(b) makes it unlawful "[t]o make any untrue
statement of a material fact or to omit to state a material
fact necessary in order to make the statements made, in the
light of the circumstances under which they were made, not
misleading."  17 CFR § 240.10b–5(b).  This Rule accom-
plishes two things.  It prohibits "any untrue statement of a
material fact"—*i.e.*, false statements or lies.  *Ibid.*  It also
prohibits omitting a material fact necessary "to make the
statements made . . . not misleading."  *Ibid.*  This case
turns on whether this second prohibition bars only half-
truths or instead extends to pure omissions.

A pure omission occurs when a speaker says nothing, in
circumstances that do not give any particular meaning to
that silence.  Take the simplest example.  If a company fails
entirely to file an MD&A, then the omission of particular
information required in the MD&A has no special signifi-
cance because no information was disclosed.  Half-truths, on
the other hand, are "representations that state the truth only
so far as it goes, while omitting critical qualifying informa-
tion."  *Universal Health Services, Inc.* v. *United States
ex rel. Escobar*, 579 U. S. 176, 188 (2016); see also *Omnicare,
Inc.* v. *Laborers Dist. Council Constr. Industry Pension
Fund*, 575 U. S. 175, 192 (2015) ("[L]iteral accuracy is not
enough: An issuer must as well desist from misleading inves-
tors by saying one thing and holding back another").  "A
classic example of an actionable half-truth in contract law is
the seller who reveals that there may be two new roads near
a property he is selling, but fails to disclose that a third po-
tential road might bisect the property."  *Universal Health*

---

tion of a violation of the disclosure requirements of Item 303 does not lead
inevitably to the conclusion that such disclosure would be required under
Rule 10b–5.  Such a duty to disclose must be separately shown' ").

*Services*, 579 U. S., at 188–189. In other words, the difference between a pure omission and a half-truth is the difference between a child not telling his parents he ate a whole cake and telling them he had dessert.

Rule 10b–5(b) does not proscribe pure omissions. The Rule prohibits omitting material facts necessary to make the "statements made . . . not misleading." Put differently, it requires disclosure of information necessary to ensure that statements already made are clear and complete (*i.e.*, that the dessert was, in fact, a whole cake). This Rule therefore covers half-truths, not pure omissions. Logically and by its plain text, the Rule requires identifying affirmative assertions (*i.e.*, "statements made") before determining if other facts are needed to make those statements "not misleading." See, *e.g.*, 6 Oxford English Dictionary 857 (1933) (def. 3) (defining "statement" as a "written or oral communication setting forth facts, arguments, demands, or the like"); Webster's New International Dictionary 2461 (2d ed. 1942) (defining "statement" as the "[a]ct of stating, reciting, or presenting, orally or on paper"). It once again "bears emphasis that §10(b) and Rule 10b–5(b) do not create an affirmative duty to disclose any and all material information. Disclosure is required under these provisions only when necessary 'to make . . . statements made, in the light of the circumstances under which they were made, not misleading.'" *Matrixx Initiatives, Inc.* v. *Siracusano*, 563 U. S. 27, 44 (2011) (quoting Rule 10b–5(b)).

Statutory context confirms what the text plainly provides. Congress imposed liability for pure omissions in §11(a) of the Securities Act of 1933. Section 11(a) prohibits any registration statement that "contain[s] an untrue statement of a material fact or omit[s] to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U. S. C. §77k(a). By its terms, in addition to proscribing lies and half-truths, this section also creates liability for failure to speak on a subject at all. See

*Omnicare*, 575 U. S., at 186, n. 3 ("Section 11's omissions clause also applies when an issuer fails to make mandated disclosures—those 'required to be stated'—in a registration statement").   There is no similar language in § 10(b) or Rule 10b–5(b).   Cf. *Ernst & Ernst* v. *Hochfelder*, 425 U. S. 185, 208 (1976) ("The express recognition of a cause of action premised on negligent behavior in § 11 stands in sharp contrast to the language of § 10(b)").   Neither Congress in § 10(b) nor the SEC in Rule 10b–5(b) mirrored § 11(a) to create liability for pure omissions.   That omission (unlike a pure omission) is telling.   Cf. *Blue Chip Stamps* v. *Manor Drug Stores*, 421 U. S. 723, 734 (1975) ("When Congress wished to provide a remedy . . . it had little trouble in doing so expressly").

"Silence, absent a duty to disclose, is not misleading under Rule 10b–5." *Basic Inc.* v. *Levinson*, 485 U. S. 224, 239, n. 17 (1988).   Even a duty to disclose, however, does not automatically render silence misleading under Rule 10b–5(b).  Today, this Court confirms that the failure to disclose information required by Item 303 can support a Rule 10b–5(b) claim only if the omission renders affirmative statements made misleading.

Moab and the United States suggest that a plaintiff does not need to plead any statements rendered misleading by a pure omission because reasonable investors know that Item 303 requires an MD&A to disclose all known trends and uncertainties.   That argument fails, however, because it reads the words "statements made" out of Rule 10b–5(b) and shifts the focus of that Rule and § 10(b) from fraud to disclosure.  See *Chiarella* v. *United States*, 445 U. S. 222, 234–235 (1980) ("Section 10(b) is aptly described as a catchall provision, but what it catches must be fraud").   It would also render § 11(a)'s pure omission clause superfluous by making every omission of a fact "required to be stated" a misleading half-truth.

Moab also contends that without private liability for pure omissions under Rule 10b–5(b), there will be "broad immu-

nity any time an issuer fraudulently omits information Congress and the SEC require it to disclose." Brief for Respondent Moab Partners, L. P. 1. That is not so. For one thing, private parties remain free to bring claims based on Item 303 violations that create misleading half-truths. For another, the SEC retains authority to prosecute violations of its own regulations. The Exchange Act requires that issuers file reports "in accordance with such rules and regulations as the Commission may prescribe," 15 U. S. C. §78m(a), and the SEC can investigate "whether any person has violated . . . any provision of [the Exchange Act], [or] the rules or regulations thereunder," §78u(a)(1), including Item 303.[2]

\* \* \*

Pure omissions are not actionable under Rule 10b–5(b). The judgment of the Court of Appeals for the Second Circuit is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

---

[2] Moab and the United States spill much ink fighting the question presented, insisting that this case is about half-truths rather than pure omissions. The Court granted certiorari to address the Second Circuit's pure omission analysis, not its half-truth analysis. See Pet. for Cert. i ("Whether . . . a failure to make a disclosure required under Item 303 can support a private claim under Section 10(b), *even in the absence of an otherwise-misleading statement*" (emphasis added)); see also 2022 WL 17815767, \*1 (Dec. 20, 2022) (distinguishing between these "two circumstances"). The Court does not opine on issues that are either tangential to the question presented or were not passed upon below, including what constitutes "statements made," when a statement is misleading as a half-truth, or whether Rules 10b–5(a) and 10b–5(c) support liability for pure omissions.

REPORTER'S NOTE

The attached opinion has been revised to reflect the usual publication and citation style of the United States Reports. The revised pagination makes available the official United States Reports citation in advance of publication. The syllabus has been prepared by the Reporter of Decisions for the convenience of the reader and constitutes no part of the opinion of the Court. A list of counsel who argued or filed briefs in this case, and who were members of the bar of this Court at the time this case was argued, has been inserted following the syllabus. Other revisions may include adjustments to formatting, captions, citation form, and any errant punctuation. The following additional edits were made:

None